UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DEBORAH MINK,	Case No. 1:19-cv-300

    Plaintiff,	Bowman, M.J.

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Deborah Mink filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled.  See 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents two closely related claims of error for this Court's review.[1]  As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the record as a whole.

**I. Summary of Administrative Record**

This is Plaintiff's second appeal to this Court.  Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging a disability onset date of September 9, 2013. (Tr. 294-300).  Her application was denied initially and upon reconsideration, following which she requested a hearing before an Administrative Law Judge.  ("ALJ").  After Plaintiff was unable to appear at the scheduled hearing, the ALJ issued a Notice of

---

[1]The parties have consented to disposition by the undersigned magistrate judge.  See 28 U.S.C. § 636(c).

1

Dismissal, which the Appeals Council declined to review. Plaintiff then appealed to this Court, and soon thereafter, the parties filed a joint motion to remand in order to provide Plaintiff with a new opportunity to appear at a hearing before an Administrative Law Judge. (Tr. 85-86). The Court granted that motion. (Tr. 88-90).

Pursuant to the remand order, a supplemental hearing was held on August 27, 2018 before ALJ Anne Shaughnessy. (Tr. 30-37). This time, Plaintiff expressly waived her right to appear and give testimony, although counsel appeared and presented oral argument on her behalf. (Tr. 290). A vocational expert also appeared and provided testimony. On October 19, 2018, the ALJ issued an adverse written decision. (Tr. 8-24). After the Appeals Council declined review, Plaintiff filed a second judicial appeal.

Plaintiff was 59 years old at the time of her alleged onset date and had attained the age of 60 as of her date last insured, June 30, 2014. She has a high school education and past relevant work experience as an accounting clerk and as a telephone book deliverer. (Tr. 327). The ALJ found that Plaintiff has multiple severe impairments including gout, osteoarthritis and synovitis of the left foot, amblyopia, and obesity. (Tr. 14). However, none of Plaintiff's impairments, alone or in combination, met or medically equal any Listed Impairment in 20 C.F.R. Part 404, Subpart P, App. 1, such that Plaintiff would be entitled to a presumption of disability. (*Id.*) Plaintiff does not dispute the ALJ's determination that her impairments did not meet or equal any Listing.

After considering the record, the ALJ determined that Plaintiff retained the ability to perform work at the "light" exertional level, with additional nonexertional limitations. Specifically, the ALJ found that Plaintiff retained the following residual functional capacity ("RFC"):

> The claimant could stand and/or walk for four hours in an eight-hour workday. She could not climb ladders, ropes or scaffolds. The claimant

> could occasionally climb ramps/stairs and crawl.  The claimant should avoid all exposure to hazards such as unprotected heights.

(*Id.*)  Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that prior to her DLI, Plaintiff retained the ability to perform her prior work as an accounting clerk, which is generally performed at the sedentary level of exertion, but was performed by Plaintiff at the light level of exertion. (Tr. 17-18).  Therefore, the ALJ determined that Plaintiff was not under a disability.  The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

In her appeal to this Court, Plaintiff argues that the ALJ erred by "ignor[ing] the opinion of a treating physician" and by failing to include additional visual limitations in the hypothetical question posed to the vocational expert.  (Doc. 11 at 7).  I find no reversible error.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability."  *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

3

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must

present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### B. Plaintiff's Claims Alleging Visual Limitations

Both of Plaintiff's claims relate to her assertion of RFC limitations based on her amblyopia: (1) that the ALJ erred by failing to give controlling weight to the medical opinions of her treating optometrist; and (2) that the ALJ failed to incorporate a visual limitation into her RFC. To be clear, Plaintiff does not challenge any of the ALJ's findings concerning her other physical impairments, on which her initial disability application was based.

In that application, Plaintiff alleged she became disabled beginning September 9, 2013[2] due to a combination of physical impairments that included gout, obesity, high blood pressure, mitral valve prolapse, and shingles. (Tr. 326). She did not assert visual impairments in that section of her application but alluded to them in a narrative "remarks" section in which she alleged her impairment of shingles impacted her vision. Specifically she alleged "lazy eye (left), right eyes [sic] *affected by shingles*." (Tr. 331, emphasis added).[3] Although she complained of "problems getting up from sitting, need assistance walking, cannot stand for long periods…shortness of breath, need assistance for personal grooming, bathing, going to bathroom, etc.," she did not complain of any specific functional limitation from her alleged visual impairments. (Tr. 331). She reported that

---

[2]The record contains no explanation of why Plaintiff believes she became disabled on this date. There does not appear to be any medical appointment, injury, or other event that corresponds to the referenced date.
[3]The ALJ did not find shingles to be a severe impairment and found no eye impairment other than the congenital amblyopia in Plaintiff's left eye. Plaintiff does not challenge those findings in this appeal.

5

she last worked full-time at the end of February 2008, more than 5 years prior to her alleged onset date but was let go of her job for reasons unrelated to any impairment. (Tr. 326-327). Despite not having asserted any specific visual impairment in her initial application, Plaintiff's counsel advocated for such a limitation at the hearing based upon the submission of a post-DLI examination report from Plaintiff's optometrist.

### 1. The ALJ's Discussion of the Optometrist's Report

Plaintiff's optometrist was the sole treating source who completed any type of functional assessment or report. Social security regulations generally provide for an order of hierarchy in the evaluation of medical opinion evidence. For claims filed before March 27, 2017 like the one presented, the regulations specify that "[g]enerally," an ALJ is required to "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you," with the most weight, or "controlling weight" to be given to treating physicians. 20 C.F.R. § 404.1527(c)(1) and (2).

The ALJ reviewed and discussed the August 21, 2014 report of the optometrist. (*See* Tr. 477-481). The report reflects that Plaintiff had normal monocular vision, in that her corrected vision for both reading and distance was normal (20/20) on the right. However, due to her congenital amblyopia, commonly known as lazy eye, her left eye vision was only 20/400. Her visual fields were normal. (Tr. 478). After noting that the examination post-dated Plaintiff's DLI of June 30, 2014,[4] the ALJ summarized the report as follows:

> The optometrist noted diagnoses of refractive amblyopia present since birth and an inferior corneal scar, although he noted the corneal scar did not affect her vision…. He did note impairment in her left eye that affected her

---

[4] Plaintiff does not cite to any other evidence in the record to support her claim of disability based upon visual impairment. In order to receive any benefits, Plaintiff was required to prove that she became disabled prior to June 30, 2014.

6

> ability to see details near or at distances. However, he noted she retained peripheral vision, which should not affect her ability to ambulate. He directed the claimant to avoid dangerous situations and wear protected lenses to protect from damage to her right eye. The claimant's visual medical records through October 2016 show diagnoses of presbyopia, refractive amblyopia and cortical cataract with no significant directives other than advising the claimant to wear protective lenses in her glasses….

(Tr. 16).

A consulting physician, Rannie Amiri, M.D., reviewed the evidence of record at the reconsideration level on August 29, 2014. Dr. Amiri noted that, per the optometrist's report, Plaintiff's left eye affects her visual acuity in that eye only. (Tr. 65). However, because her visual fields were grossly intact and because her optometrist "indicates amblyopia has been present since childhood" and was life-long, Dr. Amiri opined that she had had "adequate time to accommodate" and/or to "adapt for any depth perception issues." (Tr. 65-66). Therefore, "[b]ased on current severity [of visual limitations]," Dr. Amiri concluded that "additional limits beyond those already noted in postural and environmental hazard sections…are not warranted" (Tr. 66). Discussing the medical opinion evidence, the ALJ gave Dr. Amiri's RFC opinions "great weight." (Tr. 17).

At the outset, the undersigned must determine whether the optometrist's August 21, 2014 report should be considered to be a treating physician *opinion*, as opposed to merely an objective medical record. Despite the relatively modest amount of "opinion" contained therein, the record clearly was intended to include a medical opinion. The report was completed on a form supplied by counsel, and the instructions state the intent to seek support for Plaintiff's claim for disability benefits, including "work-related functional limitations." (Tr. 477). The form provides space to "explain how the visual impairment, if any, affects this individual's ability to perform work-related activities (driving, reading,

7

working at heights or other hazardous situations)." (Tr. 481). In response, the optometrist wrote:

> The patient's visual impairment in the left eye affects her ability to see detail at distance and near with that eye only. The patient has peripheral vision in her left eye, therefore, should not have difficulty ambulating. The patient must avoid dangerous situations and wear protective lenses (e.g. polycarbonate) full-time in order to protect her good eye (right eye).

(*Id.*)

Plaintiff's entire argument is based upon the premise that each sentence in the narrative section constitutes medical opinion evidence. However, contrary to Plaintiff's argument, the first sentence does not state a clear medical opinion on specific work-related visual limitations. Instead, the statement reflects a medical fact (as opposed to opinion) that acknowledges that Plaintiff was born with a congenital defect that impairs visual acuity in her left eye only. A statement of impairment is not the same as an opinion on the degree of functional limitation caused by the impairment. *See Allen v. Com'r of Soc. Sec.*, 561 F.3d 646, 651 n.3 (6th Cir. 2009). The next sentence contains both an additional fact (that she retains peripheral vision) and an opinion (that Plaintiff's ability to ambulate is unaffected by her left eye amblyopia).

Plaintiff points to no other evidence in the record or to any medical opinion that her functional abilities to drive, read, or perform other work activities have ever been functionally limited by her congenital lazy eye throughout her life.[5] The optometrist's report implicitly suggests a contrary conclusion, since he declined to comment despite

---

[5]As Defendant points out, other parts of the record strongly suggest that Plaintiff did not experience any work-related limitations relating to her amblyopia prior to her DLI. For example, Plaintiff does not point to any accommodations during her schooling or work history. (*See* Tr. 307, 327). That work history includes Plaintiff having worked as an accounting clerk from 1997 through early 2008, during which time she suffered from the exact same congenital eye condition.

8

being specifically asked how her visual impairment affected "driving, reading" and instead stated that she has 20/20 vision (as corrected) in her right eye and her visual fields, including peripheral vision, are intact. Thus, the only RFC opinions provided by the optometrist were that Plaintiff "should not have difficulty ambulating" but "must avoid dangerous situations and wear protective lenses (e.g. polycarbonate) full-time in order to protect her good eye (right eye)." (Tr. 481).

Somewhat understandably, the ALJ discussed the optometrist's report but did not expressly acknowledge that it contained some (albeit limited) medical opinions. Again, the primary "opinion" offered by the optometrist was that Plaintiff should wear polycarbonate lenses and avoid "dangerous situations." The ALJ's RFC restriction requiring Plaintiff to avoid all "hazards" appears to incorporate the avoidance of "dangerous situations."[6] Thus, to the extent that Plaintiff argues that the ALJ erred by rejecting a medical "opinion" regarding the degree of functional limitation provided by her treating optometrist, she is mistaken because the optometrist did not offer any opinions on specific work-related visual limitations caused by her lazy eye.

Although the ALJ did not specifically discuss the optometrist's report in the section discussing medical opinion evidence, the ALJ did give "great weight" to the RFC opinions of a consulting physician, Dr. Amiri. Plaintiff claims that "Dr. Amiri assigned controlling weight to the optometrist's *opinion that Plaintiff's left eye affects the ability to see detail and near and distance*." (Tr. 64, emphasis added). For the reasons explained, this is a misstatement of the record. Dr. Amiri merely listed the optometrist's opinion under a summary of "opinion evidence" considered on reconsideration. Without identifying what

---

[6]Plaintiff does not argue that the ALJ's failure to limit Plaintiff to the wearing of polycarbonate lenses had any impact on the non-disability determination.

9

specific "opinion" he was considering, Dr. Amiri succinctly stated: "Weight is given to the 8/28/14 opinion – generally supported by the objective evidence in file." (Tr. 64). Thus, contrary to Plaintiff's false premise, Dr. Amiri neither identified nor adopted any specific functional limitations offered by the optometrist relating to Plaintiff's left-eye impairment. To the contrary, Dr. Amiri clearly explained that no additional functional limitations were required to address Plaintiff's congenital amblyopia beyond the RFC environmental hazards and postural limitations as stated.

Aside from misstating the nature of the optometrist's opinions on her work-related limitations, Plaintiff broadly argues that the ALJ violated the "good reasons" rule. (Doc. 11 at 10). When a treating physician's opinion is not given controlling weight, the ALJ must provide "good reasons" for doing so. *Blakley v. Com'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009). Good reasons "must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley,* 581 F.3d at 406-407; *see also* Soc. Sec. Rul. 96–2p. An ALJ's failure to provide an adequate explanation for according less than controlling weight to a treating source may only be excused if the error is harmless or de minimis, such as where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." *Blakley*, 581 F.3d at 409 (quoting *Wilson,* 378 F.3d at 547).

Because the ALJ did not reject the optometrist's relevant opinions (and incorporated his opinion that Plaintiff should avoid "dangerous situations" by restricting her to the avoidance of "hazards"), I find no violation of the "good reasons" rule. To the extent that any reviewing court would disagree and conclude that the optometrist's statement of impairment in the left eye constituted an "opinion" rather than of medical fact,

10

the undersigned alternatively finds the ALJ's failure to more fully articulate the reasons for not including a left-eye limitation in the RFC hypothetical to be harmless. The overwhelming evidence in the record presented demonstrates that Plaintiff's amblyopia did not cause work-related limitations or preclude her from performing her prior accounting job.

### 2. The ALJ's Assessment of the Vocational Expert Testimony

The testimony of a vocational expert ("VE") in response to an accurate hypothetical question constitutes substantial evidence to support a non-disability determination. See *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001). The VE initially testified that Plaintiff could perform her work as an accounting clerk, either at the light or sedentary levels. However, Plaintiff argues that in this case, the VE's testimony does not provide substantial evidence based upon a follow-up question asked by the ALJ, who asked if the VE's testimony would be altered by the addition of a "visual impairment in the left eye that affects her ability to see detail at distance and near with that eye only." (Tr. 35). In response, the VE opined that such a person "would have difficulty, *over time*, due to the near acuity that's required for that [accounting clerk] job," based "*solely on my experience dealing with people with visual difficulties and close clerical work.*" (Tr. 35-36, emphasis added).

The undersigned finds no reversible error. As discussed above, the hypothetical initially posed to the VE is supported by substantial evidence in the record as a whole and represents an accurate description of Plaintiff's RFC. In addition, the VE's testimony concerning the additional visual limitation was equivocal and ambiguous at best, and the hypothetical notably did not explain that the individual suffered from a congenital defect

11

that had not changed over time.[7] The record reflects that Plaintiff had no visual-impairment-related limitation in performing her accounting clerk position for more than a decade. The record reflects no change to that congenital condition during the period of alleged disability.

### III. Conclusion and Order

For the reasons discussed, I find no error in the ALJ's analysis of the medical opinion evidence in this case, or in the RFC limitations as determined by the ALJ. Accordingly, **IT IS ORDERED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

    *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

---

[7] The ALJ's added query followed a hypothetical by Plaintiff's counsel, who asked the VE about a hypothetical individual with a bilateral visual impairment as opposed to a single-eye impairment.